IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FLORENCE MASON, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GIOVANNI CAMPBELL, et al., | : | No. 16-1675 |
| Defendants. | : | |

MEMORANDUM

**Schiller, J.**                                                                                                                July 29, 2016

     Florence Mason is suing numerous defendants over her eviction from her Philadelphia home and the criminal proceedings that resulted from her subsequent refusal to leave. Mason alleges that Judge Giovanni Campbell conspired with the District Attorney's Office and the Defender Association of Philadelphia to subject her to illegal pretrial detention and deny her the attorney of her choice. The Commonwealth of Pennsylvania ("the Commonwealth"), District Attorney R. Seth Williams ("D.A. Williams"), Judge Giovanni Campbell, and the Defender Association of Philadelphia, along with Public Defenders Christopher Boltinghouse, Rachel Miller, and Jules Szantos (together, the "Public Defender Defendants"), now move to dismiss the Amended Complaint. For the reasons that follow, the Court dismisses all claims against the Commonwealth, D.A. Williams, and Judge Campbell. It also dismisses Mason's federal claims against the Public Defender Defendants, which are brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and 42 U.S.C. § 1983. The Court declines to exercise supplemental jurisdiction over the state law claims against the Public Defender Defendants, and remands those claims to the Philadelphia County Court of Common Pleas.

**I.      BACKGROUND**

In 2010, Mason lived in Section 8 housing with her family. (Am. Compl. ¶ 35.) According to the Amended Complaint, her landlord, Svetlana Shilovomich, was terminated from the subsidy program, but failed to notify the Masons and instead fabricated an excuse to evict them. (*Id.* ¶¶ 37–42.) The property management company, Third Corsa, initiated eviction proceedings. (*Id.* ¶¶ 43–44.) Mason alleges that while the judge initially granted possession of the home to Third Corsa, that judgment was subsequently vacated on appeal. (*Id.* ¶¶ 46–51.) Nonetheless, Third Corsa continued to prosecute the eviction and obtained writs of possession for the property. (*Id.* ¶¶ 53–56.) Philadelphia police officers attempted to evict the Masons on seven different occasions between August and December 2011, allegedly violently abusing several of the Mason children. (*Id.* ¶¶ 58–59.)

Officers arrested Florence Mason on October 15, 2011, and again on December 15, 2011, for burglary, trespass, and other charges stemming from her refusal to leave the home. (*Id.* ¶¶ 62–63.) D.A. Williams filed informations in both matters. (*Id.* ¶ 64.) Eventually, trial was scheduled for February 8, 2016, before Judge Campbell. (*Id.* ¶ 66.) On February 5, 2016, Mason hired attorney Thomas Connelly, because she believed her public defender, Christopher Boltinghouse, had not prepared for trial. (*Id.*). Connelly entered his appearance and requested a sixty day continuance, but Judge Campbell denied Mason's request to hire a private attorney and relisted the trial for February 10, 2016. (*Id.* ¶¶ 67–69.) Connelly appeared on February 10, but Judge Campbell did not allow him to represent Mason and ordered him to leave the courtroom. (*Id.* ¶¶ 73–79.)

Boltinghouse, meanwhile, moved to withdraw as counsel, and Judge Campbell set an additional hearing for February 12, 2016. (*Id.* ¶ 85.) On that day, Judge Campbell met with Boltinghouse and Assistant District Attorney Jessica Baker off the record and then increased Mason's bail. (*Id.* ¶ 86.) Mason was detained at Riverside Correctional Facility, where she later suffered a mini-stroke. (*Id.* ¶¶ 86–87.) In support of the bail increase, Judge Campbell cited Mason's failure to appear at an earlier hearing, which Mason believed she did not need to attend because her attorneys would accept service for her. (*Id.* ¶¶ 89–91.) Judge Campbell also granted Boltinghouse's motion to withdraw as Mason's counsel, appointing in his place James Berardinelli, who agreed to try the case on March 7, 2016. (*Id.* ¶¶ 87, 92.) The jury found Mason guilty of one count of conspiracy to commit criminal trespass and two counts of criminal trespass (Williams's Mot. Dismiss, Ex. 1 [Docket Sheet 1]; Ex. 2 [Docket Sheet 2].)

Mason initially filed this case in state court on March 9, 2016. She sued Judge Campbell, the Commonwealth of Pennsylvania, Christopher Boltinghouse, the Defender Association of Philadelphia, and D.A. Williams, alleging RICO violations, intentional infliction of emotional distress, false imprisonment, and constitutional violations pursuant to § 1983. She also alleged legal professional negligence against Boltinghouse and the Defender Association. Boltinghouse and the Defender Association removed the case to this Court on the basis of federal question jurisdiction on April 7, 2016. Each of these defendants filed motions to dismiss, after which Mason amended her complaint to include twenty-two additional defendants. Mason never filed proof of service for the additional defendants, so her claims against them were dismissed without prejudice for lack of prosecution. The five original Defendants, along with Miller and Szantos, filed motions to dismiss the Amended Complaint.

3

## II.     STANDARD OF REVIEW

### A.     Rule 12(b)(1)

When considering a motion to dismiss based on lack of subject matter jurisdiction, a court must determine whether the motion presents a "facial" or "factual" attack on subject matter jurisdiction. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014). Where the moving party argues that the complaint on its face fails to establish subject matter jurisdiction, a court must accept the factual allegations in the complaint as true. *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In a factual attack, however, the court may look beyond the pleadings to determine if the facts support the asserted jurisdiction. *Constitution Party*, 757 F.3d at 358.

### B.     Rule 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim, a district court must accept as true all well-pleaded allegations and draw all reasonable inferences in favor of the non-moving party. *See Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). A court need not, however, credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss. *Anspach ex rel. Anspach v. City of Phila., Dep't of Pub. Health*, 503 F.3d 256, 260 (3d Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. Although the Federal Rules of Civil Procedure impose no probability requirement at the pleading stage, a plaintiff must present "enough facts to raise a reasonable

expectation that discovery will reveal evidence of the necessary element[s]" of a cause of action. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply reciting the elements will not suffice. *Id.* (holding that a pleading that offers labels and conclusions without further factual enhancement will not survive a motion to dismiss); *see also Phillips*, 515 F.3d at 231. In deciding a motion to dismiss, the court may consider "allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

The Third Circuit has established a two-part analysis for reviewing a motion to dismiss for failure to state a claim. First, the factual allegations of the claim must be separated from the legal conclusions. The well-pleaded facts are accepted as true and any legal conclusions are disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009). Second, the court must make a common sense determination as to whether the facts alleged in the complaint are sufficient to state a plausible claim for relief. *Id.* at 211. If the court can only infer the possibility of misconduct, the complaint must be dismissed because it has alleged—but failed to show—that the pleader is entitled to relief. *Id.* When a complaint is subject to dismissal under Rule 12(b)(6), the court must permit the plaintiff to amend the complaint, unless an amendment would be inequitable or futile. *Philips*, 515 F.3d at 236.

## III.    DISCUSSION

### A.    The Commonwealth's Motion to Dismiss

The Commonwealth facially attacks the Court's subject matter jurisdiction pursuant to Rule 12(b)(1), arguing for immunity under the Eleventh Amendment. (Mem. Supp. Commonwealth's Mot. Dismiss at 6.) The Eleventh Amendment bars lawsuits in federal courts against states by individual citizens. U.S. Const. amend. XI; *Edelman v. Jordan*, 415 U.S. 651, 661–63 (1974). Eleventh Amendment sovereign immunity deprives federal courts of subject matter jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996). Therefore, this Court lacks jurisdiction over Mason's claims against the Commonwealth unless an exception to sovereign immunity applies. Lawsuits against states or state officials are not barred by the Eleventh Amendment if: (1) the state waives its sovereign immunity, *see Clark v. Barnard*, 108 U.S. 436, 447 (1883); (2) Congress, through its power to enforce the Fourteenth Amendment, abrogates sovereign immunity, *see Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996); or (3) the lawsuit is brought against a state official in the official's individual capacity, alleging an ongoing violation of federal law and seeking only prospective injunctive relief, *see Ex parte Young*, 209 U.S. 123, 159–60 (1908). Mason argues that the Commonwealth has waived its sovereign immunity in two distinct ways. (Pl.'s Resp. Opp'n Commonwealth's Mot. Dismiss at 7–10.)

#### 1.  *Waiver by receipt of federal funds*

First, Mason argues that by receiving federal funds, the Commonwealth waived its sovereign immunity for claims under various federal civil rights statutes. (*Id.* at 7); *see* 42 U.S.C. § 2000d-7 (providing that states receiving federal funds shall not be immune from lawsuits for

violations of Section 504 of the Rehabilitation Act, Title IX of the Education Amendments of 1972, the Age Discrimination Act, Title VI of the Civil Rights Act, or the provisions of any other federal statute prohibiting discrimination); *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 346 (2003) (recognizing that Congress, exercising its spending power, may condition receipt of federal funds on a waiver of state sovereign immunity). However, the Amended Complaint does not actually include claims under any of the statutes subject to 42 U.S.C. § 2000d-7. Instead, Mason requests leave to amend her Complaint for a second time to include, in particular, claims under Section 504 of the Rehabilitation Act. (Pl.'s Resp. Opp'n Commonwealth's Mot. Dismiss at 7.)

A district court need not allow a plaintiff to amend her complaint if the amendment would be futile. *Phillips*, 515 F.3d at 235. Here, the Court is persuaded that amendment would be futile. Mason already amended her Complaint once after the Commonwealth filed a nearly identical motion to dismiss, yet she failed to include any new claims that could survive a challenge based on sovereign immunity. Moreover, a state only waives immunity for claims under Section 504 against specific departments or agencies that accept federal funds. *Koslow v. Pennsylvania*, 302 F.3d 161, 171 (3d Cir. 2002). The Amended Complaint does not so much as identify a state department or agency that has harmed Mason. Therefore, the Court denies leave to amend the Amended Complaint because amendment would be futile.

    2. *Waiver by removal*

Second, Mason argues that by acquiescing to the Public Defender Defendants' removal of this case to federal court, the Commonwealth consented to federal jurisdiction and thus waived its sovereign immunity. (Pl.'s Resp. Opp'n Commonwealth's Mot. Dismiss at 10); *see*

7

*Lapides v. Bd. of Regents of Univ. System of Ga.*, 535 U.S. 613, 616 (holding that a state's removal of a lawsuit to federal court waives its Eleventh Amendment immunity). *Lapides* did suggest that a state's consent to a co-defendant's removal could be sufficient to waive Eleventh Amendment immunity and restore federal subject matter jurisdiction. *See Lapides*, 535 U.S. at 620, 624. However, the Commonwealth argues that even if it did waive its Eleventh Amendment immunity from federal court jurisdiction, it retains immunity from liability. (Commonwealth's Reply Supp. Mot. Dismiss at 2.)

In *Lombardo v. Pennsylvania Department of Public Welfare*, the Third Circuit held that state sovereign immunity is a dual concept that includes Eleventh Amendment immunity from lawsuits in federal court and immunity from liability that is defined by state law. 540 F.3d 190, 195 (3d Cir. 2008). Therefore, while *Lapides* established that a state waives its Eleventh Amendment sovereign immunity through removal to federal court, removal does not waive the state's general immunity from liability in any court. *Lombardo*, 540 F.3d at 198–200. Rather, a state may continue to invoke its state sovereign immunity as a defense to a plaintiff's claims. *Id.* at 200. Pennsylvania law makes the Commonwealth immune from lawsuits except in specified situations, none of which apply here. 1 Pa. Cons. Stat. § 2310; 42 Pa. Cons. Stat. § 8522. Therefore, the Court will grant the Commonwealth's motion to dismiss, because the Commonwealth is immune from liability.

### B. Judge Campbell's Motion to Dismiss

Judge Campbell moves to dismiss all Mason's claims against him on the basis that he is immune from this lawsuit. (Judge Campbell's Mot. Dismiss.)

### 1. Official-capacity claims

The Amended Complaint sues Judge Campbell in his individual and official capacity, and the § 1983 claim specifically indicates that it includes an official capacity claim. However, Judge Campbell is a state official, and an official-capacity lawsuit against a state official is treated as an action against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *see Thornton v. Hens-Greco*, 629 F. App'x 251, 254 (3d Cir. 2015) (noting that Pennsylvania state court judges are part of the judicial branch of the Commonwealth and thus entitled to sovereign immunity). Therefore, as Mason agrees, the Commonwealth's sovereign immunity applies to her official capacity claims against Judge Campbell. (Pl.'s Resp. Opp'n Judge Campbell's Mot. Dismiss at 5.) Since the Court has decided that the Commonwealth is immune here, Judge Campbell is also immune from all official-capacity claims.

### 2. Individual-capacity claims

Judge Campbell moves to dismiss all individual-capacity claims against him on the basis of absolute judicial immunity. (Mem. Supp. Judge Campbell's Mot. Dismiss at 8.) Judges are not liable for judicial acts, even when they are alleged to have acted maliciously or corruptly. *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Courts must engage in a two-part inquiry to determine whether judicial immunity applies. *Gallas v. Sup. Ct.*, 211 F.3d 760, 769 (3d Cir. 2000). First, judicial immunity only applies to acts taken in the judge's judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Whether an act is judicial depends on whether it is a function normally performed by a judge and whether the parties believed they dealt with the judge in his judicial capacity. *Stump*, 435 U.S. at 362. Second, a judge is not immune for judicial actions taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 12.

All the allegations against Judge Campbell in the Amended Complaint involve judicial acts. They relate to decisions on motions, actions taken from the bench, and conferences with counsel. (*See* Am. Compl. ¶¶ 69, 75–89, 92.) Mason argues that Judge Campbell undertook off-the-record meetings with counsel and other actions that were "extra-judicial and extra-jurisdictional." (Pl.'s Resp. Opp'n Judge Campbell's Mot Dismiss at 9.) However, a judge does not lose his immunity when he commits a grave procedural error, conducts a proceeding in an informal and ex parte manner, or acts maliciously. *Gallas*, 211 F.3d at 769. All allegations in the Amended Complaint involve functions normally performed by a judge, and the parties at all times dealt with Judge Campbell in his judicial capacity. Moreover, he clearly had jurisdiction over Mason's criminal case. Therefore, Judge Campbell is absolutely immune from all of Mason's claims.

### C.  D.A. Williams's Motion to Dismiss

Mason also sues D.A. Williams in his official and personal capacity, and Williams moves to dismiss all claims against him.

#### 1. *Official-capacity claims*

Mason brings § 1983 claims against D.A. Williams in his official and individual capacity. (Am. Compl. ¶ 144.) Official-capacity suits under § 1983 "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Entities may only be held liable under § 1983 when an official policy or custom harmed the plaintiff. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). The Amended Complaint does not mention any policy or custom of the District

Attorney's Office, and therefore fails to sufficiently plead a *Monell* official-capacity claim. (Am. Compl. ¶¶ 137–44.)

### 2. Individual-capacity claims

D.A. Williams argues that absolute prosecutorial immunity shields him from liability in his personal capacity. (Mem. Supp. Williams's Mot. Dismiss at 6–7.) Prosecutors are absolutely immune from claims relating to actions that are intimately associated with the judicial phases of the criminal process. *Imbler v. Pachtman*, 424 U.S. 409, 424, 430 (1976) (extending the common law doctrine of prosecutorial immunity to § 1983 cases); *see also Cullinan v. Abramson*, 128 F.3d 301, 308 (6th Cir. 1997) (noting that prosecutorial immunity applies in RICO cases); *Miller v. Nelson*, 768 A.2d 858, 861 (Pa. Super. Ct. 2001) (applying absolute prosecutorial immunity to state law claims). "The decision to initiate a prosecution is at the core of a prosecutor's judicial role," and therefore "[a] prosecutor is absolutely immune when making this decision, even where he acts without a good faith belief that any wrongdoing has occurred." *Kulwicki v. Dawson*, 969 F.2d 1454, 1463–64 (3d Cir. 1992).

Nonetheless, Mason argues that the Amended Complaint's allegations that D.A. Williams initiated prosecution against her for personal and political reasons "pierce the veil of absolute sovereign immunity." (Pl.'s Resp. Opp'n Williams's Mot. Dismiss at 5.) She cites two cases from the early 1980s that declined to extend immunity to prosecutors whose actions were motivated by personal interest. *See Beard v. Udall*, 648 F.2d 1264, 1271 (9th Cir. 1981), *overruled by Ashelman v. Pope*, 793 F.2d, 1072, 1078 (9th Cir. 1986); *Mines v. Kahle*, 557 F. Supp. 1030, 1036 (W.D. Pa. 1983). However, these cases are no longer good law. In fact, the Third Circuit has explicitly rejected their reasoning, holding that courts should analyze

prosecutorial immunity by looking at the function the prosecutor performed, not his motives. *Kulwicki*, 969 F.2d at 1464. The only specific allegations against D.A. Williams relate to the initiation of criminal charges against Mason, which is indisputably a core prosecutorial function. *See id.* Therefore, D.A. Williams is immune from Mason's individual-capacity claims and the Court grants his motion to dismiss.

D. **The Public Defender Defendants' Motion to Dismiss**

The Public Defender Defendants are not immune from this lawsuit, so the Court will address whether each claim merits dismissal pursuant to Rule 12(b)(6).

1. *RICO claim*

Count I of the Amended Complaint is a RICO claim pursuant to 18 U.S.C. § 1962(c) and (d) against all Defendants. It alleges that Defendants engaged in a pattern of racketeering activity "for the unlawful purpose of unlawfully evicting Florence Mason from her home, covering up police brutality and a conspiracy to commit welfare fraud, and to illegally deny her access to competent legal representation." (Am. Compl. ¶ 107.)

To state a claim for a violation of 18 U.S.C. § 1962(c), a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex, Co.*, 473 U.S. 479, 496 (1985). The RICO statute defines racketeering activity by reference to a list of federal criminal offenses. 18 U.S.C. § 1961(1). However, a plaintiff need only allege that a defendant engaged in acts that could be indicted under these offenses, not that the defendant was actually convicted. *Sedima*, 473 U.S. at 488. A "pattern of racketeering activity," in turn, "requires at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity."

12

18 U.S.C § 1961(5). In addition, a plaintiff must show that the acts of racketeering are related, and that they "amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Here, Mason accuses Defendants of obstruction of justice, witness tampering, retaliation against a witness, wire fraud, and racketeering, all of which qualify as RICO predicate acts. (Am. Compl. ¶ 109); *see* 18 U.S.C. § 1961(1). However, the Amended Complaint does not specify what conduct on the part of the Public Defender Defendants could lead to their indictment under any of these statutes. The only factual allegations that Mason points to in her response to the motion are that Boltinghouse met with Judge Campbell and the Assistant District Attorney off the record, after which Judge Campbell increased Mason's bail, that an unspecified public defender advised Mason that she need not appear at a 2012 court date, that Rachel Miller signed for subpoenas on Mason's behalf, and that Boltinghouse failed to prepare Mason's case for trial. (Am. Compl. ¶¶ 66, 86, 91, 102). None of these acts amounts to a single, much less multiple, predicate criminal act. Mason's allegation that the Public Defender Defendants committed various predicate offenses, therefore, is a quintessential conclusory statement that does not survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. The Amended Complaint does not state a claim against the Public Defender Defendants under § 1962(c).

Under § 1962(d), a defendant may be liable for conspiracy to violate § 1962(c) if he "knowingly agrees to facilitate a scheme which includes the operation or management of a RICO enterprise." *Smith v. Berg*, 247 F.3d 532, 538 (3d Cir. 2001). The Amended Complaint does not state a facially plausible RICO conspiracy claim against the Public Defender Defendants, because it does not allege facts suggesting that they knowingly agreed to facilitate any illegal

13

scheme undertaken by their co-defendants. *See Twombly*, 550 U.S. at 570. The only alleged interactions between the Public Defender Defendants and their co-defendants are Boltinghouse's off-the-record conference with Judge Campbell and Miller's acceptance of subpoenas that were served by the District Attorney's office, both of which are routine acts that do not plausibly constitute a knowing agreement to facilitate any of those co-defendants' acts. (Am. Compl. ¶ 86, 102). Therefore, the Amended Complaint fails to state a claim against the Public Defender Defendants under § 1962(d).

Appearing to recognize the deficiencies of her Amended Complaint, Mason asks the Court to dismiss her claims against the Public Defender Defendants without prejudice and grant her leave to amend her Complaint a second time. (Pl.'s Resp. Opp'n Public Defender Defs.' Mot. Dismiss.) However, the Court will deny leave to amend the RICO claims because such amendment would be futile. *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) (noting that a court may deny leave to amend when amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss for failure to state a claim). Mason already amended the Complaint once, after the Public Defender Defendants filed a similar motion to dismiss. Yet the Amended Complaint, like the initial Complaint, is devoid of any non-conclusory allegations that could give rise to an inference that the Public Defender Defendants committed any act of racketeering activity. Therefore, the Court grants the motion to dismiss the RICO claim as to the Public Defender Defendants with prejudice and denies Mason leave to amend the complaint.

*2. Section 1983 claim*

The Amended Complaint also includes a civil rights claim pursuant to 42 U.S.C. § 1983 against the Public Defender Defendants and others. In order to state a claim under § 1983, a plaintiff must show: "(1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Robb v. City of Philadelphia*, 733 F.2d 286, 290–91 (3d Cir. 1984). The Supreme Court has held that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981). All the factual allegations in the Amended Complaint relating to the Public Defender Defendants involve actions taken while they were performing a lawyers' traditional functions as Mason's attorneys. Therefore, Mason fails to state a claim under § 1983 and amendment would be futile. The Court dismisses the § 1983 claim against the Public Defender Defendants with prejudice and denies leave to amend the Amended Complaint.

*3. State law claims*

In addition to the two federal law claims described above, Mason brings state law claims against the Public Defender Defendants for intentional infliction of emotional distress, false imprisonment, and legal professional negligence. A district court may decline to exercise supplemental jurisdiction over a state law claim if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367. Since the Court has dismissed the federal claims against the Public Defender Defendants, it declines to exercise supplemental jurisdiction and remands

the state law claims against the Defender Association of Philadelphia, Christopher Boltinghouse, Rachel Miller, and Jules Szantos to the Philadelphia County Court of Common Pleas.

## IV. CONCLUSION

For the foregoing reasons, the Court dismisses all claims against the Commonwealth of Pennsylvania, Judge Giovanni Campbell, and District Attorney Seth Williams. It also dismisses the RICO and § 1983 claims against the Public Defender Defendants, and remands the state law claims against the Public Defender Defendants to state court. An Order consistent with this Memorandum will be docketed separately.